IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 24-03033-01-CR-S-RK |
| | ) | |
| BRIAN KEITH WILSON, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT & RECOMMENDATIONS**

Before the Court is Defendant's Motion to Suppress Evidence. (Doc. 26.) This action was referred to the undersigned for the purpose of submitting a report on any pretrial motions to suppress evidence. Upon review, it is **RECOMMENDED** that the Motion be denied.

**I.  Background**

In this matter, Defendant is charged by Indictment as follows:

On or about December 21, 2023, in Greene County, in the Western District of Missouri, the defendant, **BRIAN KEITH WILSON**, knowing that he had previously been convicted of a crime punishable by imprisonment for a term exceeding one year, knowingly possessed a firearm, that is, specifically a Glock, model 19, pistol, bearing serial number BYLY150, which had been transported in interstate commerce, all in violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(8).

(Doc. 1.)

Pursuant to the Fourth and Fourteenth Amendments to the United States Constitution, Defendant asserts that the "traffic stop of the Defendant was prolonged, and there was no probable cause to search the vehicle" and moves to suppress "all evidence derived from the unconstitutional search and seizure." (Doc. 26 at 1, 7.) The Government filed Suggestions in Opposition to the motion. (Doc. 29.) On October 29, 2024, the undersigned conducted an evidentiary hearing. The

Government was represented by Assistant U.S. Attorneys Jim Kelleher and Stephanie Wan, and Defendant appeared in person with his attorney, Austin Knoblock. Brad Nicholson testified as a witness for the Government.

## II. Findings of Fact[1]

Brad Nicholson is a detective with the Special Investigations Unit of the Springfield Police Department, where he has worked since 2010. Tr. at 3. Det. Nicholson has conducted hundreds of drug investigations and smelled burnt marijuana numerous times. Tr. at 7.

On December 21, 2023, Det. Nicholson was doing street enforcement with Special Agent Cameron Heath of the FBI. Tr. at 3. That evening, Det. Nicholson observed a vehicle in front of him make an illegal right turn at a red light. Tr. at 4. Based on this violation, Det. Nicholson activated his lights to initiate a traffic stop. *Id*. At 8:28 p.m., the vehicle stopped, and Det. Nicholson approached and contacted Defendant, the driver and sole occupant of the vehicle. Tr. at 6; Ex. 1. Det. Nicholson was "very familiar" with Defendant and believed him to be a gang member with a "violent history." Tr. at 11. As soon as he spoke with Defendant, Det. Nicholson smelled burnt marijuana coming from inside the vehicle. Tr. at 6. Based on the freshness of the odor, Det. Nicholson believed Defendant had just smoked marijuana inside the vehicle. Tr. at 7.

Det. Nicholson explained the reason for the stop to Defendant, made small talk, then asked Defendant to exit the vehicle while he performed routine checks. Tr. at 6-7, 9-10; Ex. 1. To make the encounter seem like a routine traffic stop due to Defendant's violent history, Det. Nicholson told Defendant that if the check came back clean, he would get him out of there. Tr. at 11; Ex. 1. At 8:30 p.m., Det. Nicholson returned to his vehicle, where he performed a routine warrant check of Defendant, which came back clean. Tr. at 7, 11, 14; Ex. 1. At 8:33 p.m., Det. Nicholson

---

[1] The facts set forth are taken from the testimony adduced and evidence presented at the hearing. See Transcript (doc. 40) ("Tr.") and Government Ex. 1.

2

recontacted Defendant and asked him, "other than a little bit of weed, anything in the car?" Tr. at 8; Ex. 1. Defendant replied that he had just smoked his last one and that there was no marijuana inside the vehicle. Tr. at 8; Ex. 1. At this point approximately five minutes had passed since Det. Nicholson initially contacted Defendant.

Det. Nicholson then advised Defendant that he was going to search the vehicle. Tr. at 12; Ex. 1. Defendant then became agitated, and Det. Nicholson returned to his vehicle to call for backup. Ex. 1. At 8:39 p.m., additional officers arrived, and Det. Nicholson began to search the vehicle. *Id*. At 8:40 p.m. Det. Nicholson found a Glock handgun under the driver seat and a small bag of marijuana in the center console, both of which were seized. Tr. at 8; Ex. 1. At this point, approximately 12 minutes had passed since Det. Nicholson initially contacted Defendant. At 8:45 p.m., Det. Nicholson informed Defendant of his *Miranda* rights. Ex. 1. Det. Nicholson then spoke with Defendant about being an informant, telling Defendant that if he provided information about criminal activity, then he would not go to federal prison. Tr. at 14-15; Ex. 1. Defendant responded that he would help Det. Nicholson get guns off the streets of Springfield. Tr. at 15. At 8:55 p.m., the traffic stop concluded, Defendant was not arrested, and no citation was issued. Tr. at 9, 13-14; Ex. 1.

Section 78-263(2) of the Code of the City of Springfield, Missouri, states that "no occupant of a motor vehicle shall consume marijuana by smoking while the motor vehicle is being operated." Section 78-263 further provides that any violation shall be punished by a fine of up to $1,000.00 and/or by imprisonment in jail for up to 180 days. Springfield, Mo., Code § 1-7.

### III. Conclusions of Law

The Fourth Amendment protects citizens from unreasonable searches and seizures by the government. *See* U.S. Const. amend. IV; *United States v. Va Lerie*, 424 F.3d 694, 701 (8th Cir.

2005). Generally, evidence obtained because of an unlawful search or seizure, and the fruits therefrom, cannot be used against a defendant and must be suppressed. *United States v. Riesselman*, 646 F.3d 1072, 1078-79 (8th Cir. 2011). Arguing that the "traffic stop [] was prolonged, and there was no probable cause to search the vehicle," Defendant moves to suppress "all evidence derived from the unconstitutional search and seizure."

### A. The odor of marijuana

Defendant's arguments hinge almost entirely on his allegation that Det. Nicholson "decided to fabricate a smell of marijuana that didn't exist during the initial interaction." (Doc. 26 at 7.) However, contrary to Defendant's unfounded accusation, Det. Nicholson's testimony in this matter is entirely credible.

Determining the credibility of a witness is a task generally left to the hearing judge and, if the findings are not internally inconsistent, rarely results in clear error. *See Anderson v. City of Bessemer City*, 470 U.S. 564 (1985); *see also United States v. Heath*, 58 F.3d 1271 (8th Cir. 1995). Here, Det. Nicholson has conducted hundreds of drug investigations and smelled burnt marijuana numerous times. Additionally, his testimony is consistent with other facts present in this matter. Specifically, when Det. Nicholson asked Defendant if there was anything besides marijuana in the vehicle, Defendant replied that had just smoked his last one. And during the subsequent search of the vehicle, Det. Nicholson found a small bag of marijuana.

Defendant takes issue with the fact that Det. Nicholson initially told Defendant if the check came back clean, he would get him out of there, and did not discuss marijuana until after running the check. But this raises no concern, as officers may take measures "reasonably necessary to protect their personal safety and to maintain the status quo during the course of the stop." *United States v. Smith*, 648 F.3d 654, 659 (8th Cir. 2011). Thus, Det. Nicholson's decision to delay

4

addressing the odor of marijuana for approximately five to six minutes while he ran routine checks is justifiable for officer safety reasons, considering Defendant's violent history. Notably, Defendant did become agitated when Det. Nicholson advised that he was going to search the vehicle based on the odor of marijuana.

Based on the foregoing, the undersigned determines that Det. Nicholson's testimony is entirely credible. Therefore, it is established that upon initially contacting Defendant, Det. Nicholson immediately smelled burnt marijuana coming from inside the vehicle and based on the freshness of the odor, believed Defendant had just smoked marijuana inside the vehicle.

### B. The length of the traffic stop

Defendant contends that "the traffic stop was unnecessarily prolonged and [he] was unlawfully detained without reasonable suspicion beyond the point when the initial traffic stop should have ended." (Doc. 26 at 3.) Specifically, he claims that the "traffic stop could have been concluded in a mere five or six minutes based on the routine checks coming back quickly and clean." The undersigned does not agree with this argument, as follows.

In determining the reasonableness of a detention, courts look to the law enforcement purposes to be served by the stop, the time reasonably needed to effectuate such purposes, and whether the police diligently pursued such purposes. *See Williams v. Decker*, 767 F.3d 734, 741-42 (8th Cir. 2014). If prolonged beyond the time reasonably required to complete the purpose, a constitutionally permissible stop can become unlawful. *United States v. Williams*, 929 F.3d 539, 544 (8th Cir. 2019). An officer may not extend a traffic stop beyond the duration of time necessary to effectuate the purpose of the stop, "unless he develops a reasonable, articulable suspicion of criminal activity." *United States v. Gastelum*, 11 F.4th 898, 902 (8th Cir. 2021). During a traffic stop, an officer is allowed to detain an "offending motorist while [he] completes a number of

5

routine but somewhat time-consuming tasks related to the traffic violation[.]" *United States v. Barragan*, 379 F.3d 524, 528–29 (8th Cir. 2004). An officer may make inquiries unrelated to a traffic violation, "so long as those inquiries do not measurably extend the duration of the stop." *Arizona v. Johnson*, 555 U.S. 333 (2009).

Here, Det. Nicholson lawfully stopped Defendant for making an illegal right turn, which Defendant concedes. (Doc. 26 at 7.) Upon first contact with Defendant, Det. Nicholson smelled burnt marijuana coming from inside the vehicle and believed Defendant had just smoked marijuana inside the vehicle. By municipal ordinance, the City of Springfield, Missouri prohibits the smoking of marijuana while driving a motor vehicle. An officer has reasonable, articulable suspicion to extend a stop and conduct investigations unrelated to the traffic offense when he has "particularized, objective facts which, taken together with rational inferences from those facts, reasonably warrant [] suspicion that a crime [is] being committed." *United States v. Jones*, 269 F.3d 919, 927 (8th Cir. 2001) (quoting *United States v. Beck*, 140 F.3d 1129, 1136 (8th Cir.1998)). When Det. Nicholson noticed the odor of freshly burnt marijuana, he had reasonable articulable suspicion of criminal activity which justified extension of the stop and additional investigation unrelated to the traffic offense.

Furthermore, only twelve minutes passed between the initial stop of Defendant and the discovery of the Glock pistol in the vehicle. During this twelve-minute period, Det. Nicholson pursued valid purposes in investigating the municipal offense of smoking marijuana while driving. First, Det. Nicholson spoke briefly with Defendant, then returned to his vehicle to run routine checks. Next, Det. Nicholson spoke briefly with Defendant again, then returned to his vehicle to call for backup for officer safety reasons while he conducted the search. When additional officers arrived, Det. Nicholson promptly began searching the vehicle, where he found the Glock pistol

under the driver seat. Twelve minutes to complete these tasks is reasonable, and Det. Nicholson diligently pursued these tasks. As a result, Defendant's assertion that the traffic stop should have been concluded in five- or six-minutes lacks merit, and the Motion should be denied as to this basis.

### C. Probable cause to search the vehicle

Defendant also claims there was no probable cause to search the vehicle. Specifically, he asserts that he did not consent to the search of his vehicle and that Det. Nicholson "decided to fabricate a smell of marijuana that didn't exist during the initial interaction." (Doc. 26 at 7.) First, as discussed above, the undersigned finds that Det. Nicholson smelled freshly burnt marijuana coming from inside the vehicle immediately upon contacting Defendant. Therefore, contrary to Defendant's allegation, Det. Nicholson did not "fabricate" an odor of marijuana.

Also, Det. Nicholson did not need Defendant's consent to search the vehicle. Under the plain-smell doctrine, Det. Nicholson had probable cause to search the vehicle. "The Supreme Court has recognized that the odor of an illegal drug can be highly probative in establishing probable cause for a search." *United States v. Caves,* 890 F.2d 87, 90 (8th Cir.1989) (citing *Johnson v. United States,* 333 U.S. 10, 13 (1948)). In numerous cases, the Eighth Circuit has held that the smell of marijuana coming from a vehicle supports probable cause to search for drugs. *See United States v. Williams*, 955 F.3d 734, 737 (8th Cir. 2020) ("the odor of marijuana provides probable cause for a warrantless search of a vehicle under the automobile exception"); *United States v. Smith*, 789 F.3d 923, 929 (8th Cir. 2015) (the "slight odor of marijuana" was "sufficient to establish probable cause to search an automobile and its contents"); *United States v. Winters*, 221 F.3d 1039, 1042 (8th Cir. 2000) (the smell of raw marijuana created "probable cause to search the car and its contents for drugs"); *United States v. Peltier*, 217 F.3d 608, 610 (8th Cir. 2000) (the

odor of burnt marijuana "gave the deputy probable cause to search [the] truck for drugs"); *United States v. McCoy*, 200 F.3d 582, 584 (8th Cir. 2000) (the odor of burnt marijuana on the suspect and the smell of air freshener in the car gave officer probable cause to search the vehicle); *United States v. Neumann*, 183 F.3d 753, 757 (8th Cir. 1999) (officer's detection of smell of burnt marijuana provided probable cause to search entire vehicle); *Caves*, 890 F.2d at 90-91 (8th Cir. 1989) (the smell of burnt marijuana supported probable cause for a vehicle search).

Here, immediately after the vehicle had stopped, Det. Nicholson contacted Defendant and smelled the odor of freshly burnt marijuana coming from the vehicle. Shortly thereafter, Det. Nicholson asked Defendant if there was anything in the vehicle besides marijuana, to which Defendant replied that he had just smoked his last one. These facts, which led Det. Nicholson to suspect Defendant had committed the crime of smoking marijuana while driving, provided probable cause to search the vehicle for evidence of this crime. Therefore, Defendant's claim that there was no probable cause to search the vehicle fails, and the Motion should be denied as to this basis.

### D. Fruit of the poisonous tree

Lastly, Defendant asserts that "all evidence obtained as a derivative of information learned via the illegal stop should be ruled inadmissible" as "fruit of the poisonous tree." (Doc. 26 at 3.) Under the fruit of the poisonous tree doctrine, the exclusionary rule bars the admission of evidence obtained directly or indirectly through the exploitation of police illegality. *See Wong Sun v. United States*, 371 U.S. 471, 484-88 (1963). During the hearing, however, Mr. Knoblock clarified that there are no statements that Defendant seeks to suppress, and that he only moves to suppress the "evidence seized from the search of the vehicle," that being the Glock pistol at issue in this case. (Doc. 40 at 2.)

8

## IV. Recommendation

Based on the foregoing, it is **RECOMMENDED** that the Motion to Suppress Evidence be **DENIED**.

/s/ *David P. Rush*
DAVID P. RUSH
UNITED STATES MAGISTRATE JUDGE

DATE: November 21, 2024